PER CURIAM:
This is an appeal from a district court’s affirmance of the bankruptcy court's denial of secured status to a claim against a debt- or. Because we find the present assignment of a future right to a share in a public employee retirement fund can create a valid secured claim in bankruptcy and that the right in the fund is property of the estate, we reverse the judgment of the district court.
I
Gus H. Reagan and Doris J. Reagan (debtors) filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on August 26,1980. Debtors listed in their schedule of debts one in the amount of $2,658.87 owed to Austin Municipal Federal Credit Union (Credit Union). This debt, incurred by debtors pursuant to an “open ended credit plan” with Credit Union, was primarily secured by funds contained in Doris Reagan’s retirement fund account. That account, consisting of amounts- withheld from her salary checks earned as a nurse at the municipal hospital, contained a total of $6,591.83.
Doris Reagan’s right to possess and receive any benefits from the retirement fund was expressly contingent upon her termination of employment as a municipal employee. The ordinance governing the municipal retirement fund contained the following language relating to assignments of the fund as collateral:
None of the funds, provided in the Retirement system are assignable, with the exception that assignment of funds may be made to the Austin Municipal Credit Union, .. provided any assignments shall not become enforceable until such time as the employee involved is actually entitled to possession of such funds. City of Austin Retirement and Pensioning Ordinance, No. 72 0331-A. [emphasis added]
The Open End Credit Plan Agreement pursuant to which the debtors assigned Doris Reagan’s retirement fund to Credit Union provides:
Upon notice given or notice received by the maker or any co-maker of his separation from employment by the City of Austin, the entire indebtedness of the undersigned shall become immediately due and payable at the option of the Credit Union without notice, and I/we, the maker and co-makers, hereby sell, assign and transfer to the Austin Municipal Federal Credit Union, its successors *97 and assigns, any and all sums of money which may be due me/us at such time by the City of Austin as wages or salaries, as well as any and all sums in my/our City Retirement Fund ... such sale, assignment and transfer, however, to be only to the extent of all my/our obligations to the Credit Union, proceeds to be applied at Credit Union’s discretion.
On its face, the assignment is valid under the pertinent ordinance. The issues are: (1) whether Doris Reagan’s retirement fund is property of the bankruptcy estate, and (2) whether Credit Union’s claim against the debtors is secured by the fund even though Doris Reagan’s right to possession of the fund is .contingent upon termination of her employment.
II
Section 541 of the Bankruptcy Code defines the bankrupt’s estate to include “all the following property, wherever located: (1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.” Reagan’s retirement fund consisted solely of accumulated monies withheld from her salary checks, plus interest. Federal income and social security taxes on the fund have already been paid. The fund will become Reagan’s legal property upon her separation from city employment. She presently is possessed of a legal right of assignment, albeit a limited one, and an equitable interest evidenced by her vested future rights. It therefore qualifies as property of the estate under § 541.
Sections 522 and 541(c)(2), as they read at the time of this proceeding, allow a debtor to retain certain assets which would otherwise be considered property of the estate. Section 522(d) listed property that a debtor may exempt if he chooses the federal law exemptions. Section 522(b) permits the debtor to choose state law exemptions instead of federal law exemptions. Debtors here chose the state exemptions. Texas law does not exempt retirement funds. Matter of Goff, 706 F.2d 574, 579 (5th Cir.1983).
Section 541(c)(2) provides that property subject to restrictions on alienation which are enforceable “under applicable nonbank-ruptcy law” never enters the property of the estate. In Matter of Goff, this court held that “applicable nonbankruptcy law” did not include an ERISA plan exemption, but that Congress intended to exclude from the property of the estate only “spendthrift trusts” traditionally protected against creditors under applicable state law. 706 F.2d at 580.
The Goff court explained that trust funds protected against the reach of creditors in most states are those created to provide monies for the maintenance of a beneficiary, upon which the settlor has placed “spendthrift” restrictions securing the fund from creditors and the beneficiary’s own improvidence. Id. at 580. Those not so protected, in Texas and most other states, are trusts created by a settlor for his own benefit, even though they contain a spendthrift clause purporting to restrain alienation or assignment. Id. at 587. The retirement fund in this case which Reagan’s contributions created for her own benefit is expressly assignable to a credit union under Texas law. The fund therefore cannot be considered a spendthrift trust of the sort traditionally beyond the reach of a creditor credit union, thus section 541(c)(2) does not prevent it from passing into the estate.
The bankruptcy court held that, despite the broad reach of § 541, equitable considerations counselled against including the retirement fund in the property of the estate. The court stated that such inclusion would frustrate the Bankruptcy Act’s stated purpose of affording the debtor an unencumbered fresh start. This analysis reverts to pre-Code assessments of the legal nature of an asset in light of the purposes of the Bankruptcy Act. But as this court explained in Matter of Goff, § 541 of the Bankruptcy Code supplanted this analysis. It includes in the property of the estate all property of the debtor, even property needed for a fresh start. The exemptions and exclusions in the Code are designed to meet *98 the purpose of retaining for the debtor property sufficient for a fresh start. In this case those exceptions and exclusions are inapplicable to the retirement fund. It therefore is included in property of the estate.
Ill
The district court, affirming the bankruptcy court, denied secured status to Credit Union’s claim. The court relied on 11 U.S.C. § 502(b), which states:
(b) The Court ... shall allow such claim in such amount except to the extent that—
(1) such claim is unenforceable against the debtor, and unenforceable against property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.
The court reasoned that Doris Reagan was not entitled to the retirement fund until termination of her employment with the city, and that the security agreement was unenforceable until “the employee involved is actually entitled to possession of such funds.” He therefore found the security interest to be unenforceable, and affirmed the bankruptcy judge’s order holding Credit Union’s claim unsecured. We disagree with the court’s answer to this novel question.
The district court misperceived the significance of the “claim” language of § 506(b)(1). An accepted interpretation of the first part of this section is:
When the debtor and the creditor might have come to some agreement whereby the creditor would not be permitted to assert his claim against the debtor, that claim will remain unenforceable in the bankruptcy case and, under section 502(b)(1), would not for that reason be allowed to share in a distribution of the debtor’s assets.
3 Collier on Bankruptcy, U 502.02[1] at 502-28 (15th ed. 1983). The security agreement here did not forbid Credit Union to assert its claim against the Reagans for the loan it had made them.[1] Rather, it recognized the indebtedness and made an assignment of Reagan’s interest in the retirement fund as security for the loan. That the security interest was to vest in Reagan or Credit Union in the future does not affect the present enforceability of the underlying claim or render the claim unsecured. The district court’s construction confuses the claim and the security for the claim. Its interpretation of 11 U.S.C. § 502(b)(1) was erroneous.
Reagan could not prevail even if the district court’s theory were proper. Reagan got Credit Union’s money and gave in exchange a present assignment of her future rights in the retirement fund. That presently operative assignment created the security Credit Union claims. Though Credit Union cannot convert the security to cash until Reagan is separated from her employment, it is entitled above all other claimants to assert in bankruptcy its security interest in the assigned fund. Section 502(b)(1) literally would erect no bar even if it applied to the security. Credit Union’s assignment security is presently unenforceable only because Reagan’s rights to the funds have not matured by separation. This would be the precise situation covered by the “other than” words of section 502(b)(1).
The claim of Credit Union should be treated as secured by the assigned interest in Reagan’s retirement fund to the extent of the Reagan’s obligation to the Credit Union.[2] That security interest, along with any other interests in the fund, will become enforceable upon the termination of Doris Reagan’s employment by the municipality.
*99 The judgment appealed from is
REVERSED.

. We note that if it had, the proper course would have been to disallow the claim entirely, rather than to relegate it to unsecured status.

. The proof in this case showed that there was more money in the retirement fund than the amount of the Credit Union's claim, and that the City’s eventual contributions could only increase the fund. Therefore, it appears that Credit Union's claim was fully secured by Reagan's otherwise unassignable and indefeasible future right to receive her share of the fund.